IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW WALDROP, SR.,

    Plaintiff,

v.

Case No. 3:18-cv-1770-NJR-GCS

NICOLE MARSHALL,

    Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Andrew Waldrop, Sr., an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges that Defendant Nicole Marshall was deliberately indifferent to his serious medical needs after he suffered a fall due to low blood sugar. According to Defendant, Waldrop's claim cannot proceed because he failed to exhaust his administrative remedies before filing suit.

### FINDINGS OF FACT

Waldrop was incarcerated at Menard Correctional Center ("Menard"). Waldrop has type-1 diabetes, and, on June 24, 2016, he fell while climbing down from the top bunk in his cell, allegedly due to low blood sugar, injuring his knees (Doc. 1). Waldrop claims that Defendant Nicole Marshall, a member of the medical staff, denied him care and that, as a result, his pain went unaddressed for several days, resulting in a permanent limp. *Id.*

Lori Oakley, a grievance officer, searched Menard's records for grievances submitted by Waldrop between June 2016 and August 2016, and she did not locate any

grievances (Declaration of Lori Oakley, Doc. 24-1). She found only one grievance dated September 1, 2016. *Id.* The grievance was marked as an emergency by Waldrop, but the Chief Administrative Officer (CAO) determined that it was not an emergency on September 1, 2016, and returned it to Plaintiff. *Id.* The grievance was never re-submitted. *Id.*

The Administrative Review Board (ARB) records include a grievance dated August 21, 2016, that relates to Waldrop's claims in this action (Doc. 24-3). The grievance does not have a response from a counselor, a grievance officer, or the CAO at Menard. *Id.* Waldrop included a letter dated August 22, 2016, with the grievance. *Id.* In the letter, Waldrop wrote that he submitted the grievance at Menard on July 7, 2016, but he did not receive a response. *Id.* He said that he spoke to his counselor about not receiving a response twice, but he still didn't receive a response. *Id.* The ARB received the grievance on August 26, 2016; it was denied on August 31, 2016, because it was submitted without the required facility responses and outside the timeframe required by department rule 504. *Id.*

In his response to Marshall's motion, Waldrop maintains that the grievance process was unavailable to him.[1] (Doc. 26). He claims that he submitted two grievances to his counselor, Jason Vasquez, but he never received responses, prompting him to file

---

[1] In her reply brief, Marshall argues that Waldrop's response should not be considered because it was not timely-filed. Waldrop's response was due by July 29, 2019, but he did not file it with the Court until August 15, 2019. In an exhibit attached to his response, Waldrop explains that he sent his response to the law library to be filed on July 11, 2019, but it was not filed. He also attaches an August 6, 2019 letter from defense counsel explaining that his response was mailed to the Attorney General's office but was not filed with the Court. While Waldrop should have sought leave to file a late response, it would be unduly punitive to refuse to consider his response, so the Court rejects Marshall's argument as to the timeliness of the response.

the grievance directly with the ARB. *Id.* Waldrop's cumulative counseling summary does not reflect conversations with Vasquez about his medical treatment or about grievances. (Doc. 27-1, p. 5). In the counseling summary, there is only one entry of face to face contact between the two, where Waldrop and Vasquez discussed the possibility Waldrop's transfer to another IDOC facility. *Id.*

The Court held an evidentiary hearing on November 22, 2019. At the hearing, Waldrop testified that he submitted his first grievance when he was in the East Cell House area of Menard. He claimed that he put the grievance in between the bars of his cell for receipt, an understood process at the time amongst inmates. Waldrop said that he put the name of his counselor at the time on the grievance, although he could not recall the name or identify her in any way other than describing her as female. He stated that he was then moved to the North 2 Disciplinary Unit, where Vasquez was his counselor. He testified that he filed another grievance with Vasquez and spoke to Vasquez several times about the status of his grievance to no avail.

Vasquez also testified. For his part, he said that he never received or spoke with Waldrop about a grievance. When questioned about his practice of keeping notes for the counseling summary, Vasquez claimed that he took meticulous notes when speaking to inmates and always logged his conversations. He further stated he would have written down and logged a conversation with Waldrop about a grievance if one would have occurred.

LEGAL STANDARDS

A.  **Summary Judgment**

Summary judgment is proper only where the moving party can demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

B.  **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Under the procedures set forth in the Illinois Administrative Code, an inmate is required to file a written grievance within 60 days of the "incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). The grievance must be filed with the inmate's counselor, unless certain discrete issues are being grieved. *Id*. If the complaint is not resolved through a counselor, the grievance is considered by a grievance officer who must render a written recommendation to the CAO (usually the Warden) within two months of receipt, "when reasonably feasible under the

circumstances." *Id*. at § 504.830(e). The Warden then advises the inmate of a decision on the grievance. *Id.*

An inmate may also file an emergency grievance that is forwarded directly to the Warden. *Id*. at § 504.840. If "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender," consideration of the grievance will be expedited. *Id*. at § 504.840(a) and (b). An inmate may appeal the Warden's decision to the IDOC Director. *Id.* at § 504.850(a). The appeal must be in writing, must be directed to the ARB, and must be received by the ARB within 30 days of the date of the Warden's response. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within six months of receipt of the appeal. *Id*. § 504.850(d) and (e).

## Discussion

While it is true that defendants bear the burden of establishing the affirmative defense of failure to exhaust administrative remedies, *see Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011), Marshall has met that burden here. From an administrative perspective, it does not appear that Waldrop filed a grievance concerning his fall with any counselor at Menard. The records suggest that he filed his grievance to the ARB, and the grievance was rejected because it was submitted without the required facility responses and outside the 60-day timeframe. That leads to the question of whether the grievance procedures at Menard were unavailable to Waldrop, and the divergent accounts of the two witnesses that follow.

In this case, the Court does not find Waldrop's testimony credible. He was unable to provide plausible specifics about the grievances he allegedly submitted or his follow up conversations when he did not receive a response. On the other hand, Vasquez explained his routine process of logging inmate conversations, and was convincing that—if he had been a part of the conversations Waldrop insisted the two had—it would have been in the counseling notes. Waldrop, on the other hand, wanted to testify for Vasquez and recreate a conversation that likely never took place. Weighing the two conflicting stories as it must here, the Court simply finds Vasquez's testimony more believable.

## CONCLUSION

Simply stated, based on the documentary evidence and testimony, Waldrop's ARB grievance was not sufficient to exhaust his administrative remedies. Accordingly, the Motion for Summary Judgment filed by Marshall (Doc. 23) is **GRANTED**. This entire action is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  November 25, 2019

							_____
							**NANCY J. ROSENSTENGEL**
							**Chief U.S. District Judge**

## NOTICE

Out of an abundance of caution, the Court advises Waldrop as follows. If Waldrop wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Waldrop chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Waldrop files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Waldrop wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of

law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Waldrop showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Waldrop chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Waldrop cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Waldrop plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).